UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JAMES ERIC FINIAS,

    Petitioner,

v.

RENEE BAKER, *et al.*,

    Respondents.

Case No. 3:19-cv-00142-LRH-CLB

**ORDER**

## I. INTRODUCTION

This action is a petition for writ of habeas corpus by James Eric Finias, an individual incarcerated at Nevada's Lovelock Correctional Center. Finias is represented by appointed counsel. Respondents have filed an answer to Finias' amended habeas petition and Finias has filed a reply. The case is before the Court for resolution on the merits of Finias' claims. The Court will deny Finias' petition, will deny Finias a certificate of appealability, and will direct the Clerk of the Court to enter judgment accordingly.

## II. BACKGROUND

On October 25, 2010, around 9:35 pm, the Henderson, Nevada, Police Department responded to a 911 call regarding shots fired and a man lying in the middle of a roadway. *See* Trial Testimony of Troy Starr, Exh. 132, pp. 116–23 (ECF No. 48-1, pp. 117–24). An ambulance transported the man, identified as Chad Coleman, to a hospital, where he was later pronounced dead. *See* Trial Testimony of Gerard Collins, Exh. 132, pp. 148–49 (ECF No. 48-1, pp. 149–50). Coleman died from a gunshot wound to the chest; a medical examiner ruled the manner of death to be homicide. *See* Trial Testimony of Dr. Lary Simms, Exh. 130, pp. 293–99 (ECF No. 47-1, pp. 137–43).

///

About a week after the murder, detectives interviewed Diane Robinson, who was in a romantic relationship with Finias when Coleman was killed. *See* Trial Testimony of Diane Robinson, Exh. 133, pp. 5–6, 55–62 (ECF No. 49-1, pp. 6–7, 56–63). Robinson told the detectives—and later testified at trial—that she saw Finias shoot Coleman. *Id*. at 16–19, 34 (ECF No. 49-1, pp. 17–20, 35).

Finias was arrested and charged with murder with use of a deadly weapon, discharging a firearm out of a motor vehicle, and possession of a firearm by an ex-felon. Information, Exh. 3 (ECF No. 36-3). Finias pled not guilty. Transcript of Arraignment, Exh. 5 (ECF No. 36-5). On November 26, 2012, the State filed a second amended information to bifurcate the charges of murder with use of a deadly weapon and discharging a firearm out of a motor vehicle from the charge of possession of a firearm by an ex-felon. *See* Second Amended Information, Exh. 84 (ECF No. 40-3).

Finias' jury trial commenced on November 26, 2012. On the fourth day of trial, on a motion by the defense, the court declared a mistrial on account of a discovery issue. Transcript of Trial, November 29, 2012, Exh. 95, pp. 29–46 (ECF No. 43-6, pp. 30–47).

Finias' re-trial commenced on December 9, 2013, and it lasted seven days. Trial Transcripts, Exhs. 129, 130, 132, 133, 134, 136, 142 (ECF Nos. 44-34, 45-1, 46-1, 47-1, 48-1, 49-1, 50-1, 51-1, 52-2, 53-6). The jury found Finias guilty of first-degree murder with use of a deadly weapon and discharging a firearm out of a motor vehicle. Verdict, Exh. 144 (ECF No. 53-8). Finias was then tried before the same jury on the charge of possession of a firearm by an ex-felon. Transcript of Trial, December 17, 2013, Exh. 142, pp. 102–06 (ECF No. 53-6, pp. 103–07). The jury found Finias guilty of that crime as well. Verdict, Exh. 143 (ECF No. 53-7).

Finias' sentencing was held on June 16, 2014. Transcript of Sentencing, Exh. 148 (ECF No. 53-12). Finias was sentenced to life in prison without the possibility of parole for the murder, plus a consecutive term of 96 to 240 months for use of the deadly weapon; to 60 to 150 months in prison for discharging a firearm out of a motor vehicle, to run concurrent to the sentences on the murder charge; and to 28 to 72 months in

prison on the ex-felon in possession of a firearm charge, to run concurrent to the other sentences. *Id*. at 10 (ECF 53-12, p. 11). The judgment of conviction was filed on June 20, 2014. Judgment of Conviction, Exh. 150 (ECF No. 53-14).

Finias appealed, and the Nevada Supreme Court affirmed on September 10, 2015. Order of Affirmance, Exh. 172 (ECF No. 56-5).

Finias filed a pro se petition for writ of habeas corpus in the state district court on August 17, 2016. Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 175 (ECF No. 56-8). Counsel was appointed, and, with counsel, Finias filed supplemental points and authorities in support of his petition. Supplemental Points and Authorities, Exh. 183 (ECF No. 57-6). The state district court held an evidentiary hearing. Transcript of Evidentiary Hearing, Exh. 188 (ECF No. 58-1). The state district court then denied Finias' petition in a written order filed on January 22, 2018. Findings of Fact, Conclusions of Law and Order, Exh. 189 (ECF No. 58-2). Finias appealed, and the Nevada Supreme Court affirmed on January 17, 2019. Order of Affirmance, Exh. 206 (ECF No. 59-13).

This Court received Finias' original *pro se* habeas petition, initiating this action, on March 11, 2019 (ECF No. 4). The Court appointed counsel to represent Finias (ECF No.3), and, with counsel, Finias filed "Supplemental Claims to Petitioner's Pro Se Petition for Writ of Habeas Corpus" (ECF No. 11) on June 7, 2019, and an amended petition on February 11, 2020 (ECF No. 25). Finias' amended petition, his operative petition, includes the following claims:

> Ground 1: The trial court violated Finias' federal constitutional rights "by prohibiting the cross-examination of a pivotal prosecution witness [Diane Robinson] regarding criminal charges and a cooperation agreement."
>
> Ground 2: The trial court violated Finias' federal constitutional rights "by deciding as a matter of law that Diane Robinson was not an accomplice and refusing to give an instruction that accomplice testimony be corroborated."
>
> Ground 3: The trial court violated Finias' federal constitutional rights "by an instruction that required the jury find the prosecution prove only 'material' elements beyond a reasonable doubt."

3

Ground 4: Finias' federal constitutional rights were violated on account of ineffective assistance of his trial counsel because his trial counsel "[failed] to adequately investigate Debra Williams and impeach the credibility of Detective Benjamin."

Amended Petition (ECF No. 25), pp. 12–23.

Respondents filed an answer on July 9, 2020 (ECF No. 35). Finias filed a reply on January 22, 2021 (ECF No. 67).

## III. DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may not grant a petition for a writ of habeas corpus on any claim that was adjudicated on its merits in state court unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by United States Supreme Court precedent, or was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. *See* 28 U.S.C. § 2254(d). A state-court ruling is "contrary to" clearly established federal law if it either applies a rule that contradicts governing Supreme Court law or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). A state-court ruling is "an unreasonable application" of clearly established federal law under section 2254(d) if it correctly identifies the governing legal rule but unreasonably applies the rule to the facts of the case. *See Williams v. Taylor*, 529 U.S. 362, 407–08 (2000). To obtain federal habeas relief for such an "unreasonable application," however, a petitioner must show that the state court's application of Supreme Court precedent was "objectively unreasonable." *Id*. at 409–10; *see also Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003). Or, in other words, habeas relief is warranted, under the "unreasonable application" clause of section 2254(d), only if the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

4

**B. Ground 1**

In Ground 1, Finias claims that the trial court violated his federal constitutional rights "by prohibiting the cross-examination of a pivotal prosecution witness [Diane Robinson] regarding criminal charges and a cooperation agreement." Amended Petition (ECF No. 25), pp. 12–16.

Finias filed a motion *in limine* before trial, seeking permission to cross examine Robinson regarding convictions of petty larceny and obtaining money under false pretenses. Motion in Limine, Exh. 125 (ECF No. 44-30). Regarding the latter of two convictions of obtaining money under false pretenses, Robinson was originally charged with two counts of felony burglary, two counts of misdemeanor possession of stolen property, and two counts of misdemeanor obtaining money under false pretenses, but, apparently under a guilty plea agreement, was ultimately convicted of only one count of misdemeanor obtaining money under false pretenses; Finias sought to cross-examine Robinson regarding that negotiation. *See id*. The trial court entertained argument on the motion. Trial Transcript, December 11, 2013, Exh. 132, pp. 79–94 (ECF No. 48-1, pp. 80–95); Trial Transcript, December 12, 2013, Exh. 133, pp. 36–48 (ECF No. 49-1, pp. 37–49); Trial Transcript, December 12, 2013, Exh. 133, pp. 203–04 (ECF No. 50-1, pp. 46–47). The court ruled that Finias' counsel could inquire of Robinson regarding the nature of her convictions and when they occurred but could not get into specific details about those convictions. *Id*. The trial court denied Finias' request to question Robinson about the negotiation of the charges, concluding that Finias did not support that request with any evidence that the negotiation was connected to Robinson's cooperation in Finias' case. *Id*.

The prosecution brought out the fact of Robinson's convictions during her direct examination (Trial Transcript, December 12, 2013, Exh. 133, p. 35 (ECF No. 49-1, p. 36)), and then, on cross-examination, the defense briefly questioned her on that subject. *Id*. at 64 (ECF No. 49-1, p. 65).

///

Finias raised this issue on his direct appeal (Appellant's Opening Brief, Exh. 168, pp. 26–37 (ECF No. 56-1, pp. 36–47)), and the Nevada Supreme Court ruled as follows:

> … Finias contends that the district court violated his right to due process by limiting the cross-examination of Diane Robinson. We disagree. The district court permitted Finias to develop evidence from which the jury could evaluate Robinson's potential bias. *See United States v. Jenkins*, 884 F.2d 433, 436 (9th Cir. 1989) (noting that the district court abuses its discretion when it denies the jury sufficient information to evaluate a witness' bias). The district court permitted Finias to question Robinson about threats and inducements from police at the time of her initial statement, how often she met with prosecutors, and whether she had charges against her pending during Finias' prosecution. The district court correctly restricted Finias from making inquiries suggesting that Robinson received favorable treatment with respect to pending charges in exchange for her testimony because he did not have a good faith basis to make such an inquiry in the circumstances presented. *See Daniel v. State*, 119 Nev. 498, 513, 78 P.3d 890, 900 (2003) (requiring party to have good-faith basis for inquiry about specific acts of misconduct).

Order of Affirmance, Exh. 172, pp. 1–2 (ECF No. 56-5, pp. 2–3).

The Confrontation Clause of the Sixth Amendment, made applicable to the States by the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI; *Pointer v. Texas*, 380 U.S. 400, 403 (1965). "The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination*." *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974) (quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940)) (emphasis in original). The right to cross-examine guaranteed by the Confrontation Clause includes not only the right "to delve into the witness' story to test the witness' perceptions and memory," but also the right to impeach the witness by "cross-examination directed toward revealing possible biases, prejudices, or ulterior motives." *Davis*, 415 U.S. at 316. "[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id*. at 316–17; *accord Pennsylvania v. Ritchie*, 480 U.S. 39, 51–52 (1987) (plurality opinion). Cross-examination need not be "certain to affect the jury's assessment of the witness's reliability or credibility" to implicate the Sixth Amendment. *Fowler v. Sacramento Cnty. Sheriff's Dep't*, 421 F.3d 1027, 1036

(9th Cir. 2005). Rather, the Confrontation Clause protects the right to engage in cross-examination that "might reasonably" lead a jury to "question[] the witness's reliability or credibility." *Id*. (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

The defendant's right to cross-examine witnesses is not absolute, however:

> It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier this Term, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985) (*per curiam*) (emphasis in original).

*Van Arsdall*, 475 U.S. at 679.

In this federal habeas corpus action, applying the standard applicable under the AEDPA, the question is whether the Nevada Supreme Court unreasonably applied clearly established federal law—to wit, *Davis* and *Van Arsdall*—in holding that the limitations imposed by the trial court on the cross-examination of Robinson did not violate the Confrontation Clause.

In a case raising similar issues, the Ninth Circuit Court of Appeals recently stated:

> Under AEDPA, "the range of reasonable judgment can depend in part on the nature of the relevant rule." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). In other words, "'[t]he more general the rule' at issue—and thus the greater the potential for reasoned disagreement among fair-minded judges—'the more leeway [state] courts have in reaching outcomes in case-by-case determinations.'" *Renico v. Lett*, 559 U.S. 766, 776 (2010) (alterations in original) (quoting *Yarborough*, 541 U.S. at 664). Here, the relevant standard is a general one: "[T]rial judges retain wide latitude ... to impose reasonable limits on ... cross-examination," and a defendant seeking to establish a Confrontation Clause violation must show that the trial court exceeded that latitude. *Van Arsdall*, 475 U.S. at 679. It follows that "a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *accord Watson v. Greene*, 640 F.3d 501, 508–09 (2d Cir. 2011).

*Gibbs v. Covello*, --- F.3d ---, ---, 2021 WL 1654475, *5 (9th Cir. 2021).

7

Here, where Finias did not offer any evidence to show that Robinson's cooperation was connected to the negotiation of criminal charges against her, and where the trial court found that he did not have a good faith basis to question Robinson about such a connection, this Court cannot say that the Nevada Supreme Court's ruling was an unreasonable application of *Davis* or *Van Arsdall*.

Moreover, even if there was Confrontation Clause error here—the Court determines that there was not—the Court would conclude that the Nevada Supreme Court reasonably could have ruled the error harmless beyond a reasonable doubt under *Chapman v. California*, 386 U.S. 18 (1967). In *Van Arsdall*, the Supreme Court held:

> Accordingly, we hold that the constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to *Chapman* harmless-error analysis. The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. Cf. [*Harrington v. California*, 395 U.S. 250, 254 (1969); *Schneble v. Florida*, 405 U.S. 427, 432 (1972)].

*Van Arsdall*, 475 U.S. at 684.

The cross-examination of Robinson based on favorable treatment in her criminal case would have been weak because Finias did not proffer any evidence to show that Robinson's cooperation against Finias was connected to her treatment in that case.

Further, looking at the timing of the criminal charges against Robinson vis-à-vis her cooperation in Finias' case, the record indicates that Robinson was cooperating in Finias' case, and that she provided the police with the information most inculpatory of Finias, *before* the subject criminal charges were brought against her. See Trial Transcript, December 12, 2013, Exh. 133, pp. 41–48 (ECF No. 49-1, pp. 42–49). Robinson did provide further details inculpatory of Finias after the criminal charges were brought against her—regarding Finias' actions after the murder, including altering a

firearm in an attempt to thwart forensic testing (*see id.*)—but she had already, before being charged in her criminal case, provided the police with the critical information: that she was present and saw Finias murder Coleman.

Furthermore, Finias' trial counsel did cross-examine Robinson extensively about pressure the police put on her to cooperate against Finias, by threatening that she would be a suspect in Coleman's murder if she did not cooperate and that she could be incarcerated and not see her daughter for a long time. *See* Trial Transcript, December 12, 2013, Exh. 133, pp. 56–61 (ECF No. 49-1, pp.57–62). That cross-examination was much stronger than any potential cross-examination based on Robinson's favorable treatment in her comparatively minor criminal case. The impact of the potential cross-examination based on Robinson's criminal case would have been de minimus in comparison to the cross-examination, actually done, based on the pressure the police put on her when they interviewed her about Coleman's murder.

Taking into consideration all the circumstances, the Court concludes that reasonable jurists could find that any Confrontation Clause error as alleged in Ground 1 was harmless beyond a reasonable doubt.

In sum, the Court determines that the Nevada Supreme Court's ruling on the claim in Ground 1 was not contrary to, or an unreasonable application of, *Davis*, *Van Arsdall*, or any other Supreme Court precedent. The Court will deny Finias habeas corpus relief on Ground 1.

**C.     Ground 2**

In Ground 2, Finias claims the trial court violated his federal constitutional rights "by deciding as a matter of law that Diane Robinson was not an accomplice and refusing to give an instruction that accomplice testimony be corroborated." Amended Petition (ECF No. 25), pp. 16–18.

Finias raised this issue on his direct appeal (Appellant's Opening Brief, Exh. 168, pp. 37–42 (ECF No. 56-1, pp. 47–52)), and the Nevada Supreme Court ruled as follows:

> … Finias argues that the district court erred in refusing to give an instruction that Robinson was an accomplice and that her testimony should be corroborated. We disagree. The record does not indicate that Robinson was ever charged with or was liable for any offense arising out of the shooting. *See* NRS 175.291(2) (defining an accomplice as "one who is liable to prosecution, for the identical offense charged against the defendant on trial"). Moreover, Robinson's testimony was corroborated. Phone records placed Finias in the area of the shooting and demonstrated that Finias was planning to meet the victim, Finias' DNA was recovered from a cigarette at the scene, a weapon that was in Finias' possession matched the shell casings left at the scene, and the condition of the weapon confirmed that Finias damaged it after the shooting to thwart forensic testing. Therefore, the district court did not err in refusing the proposed instruction. [*Rose v. State*, 127 Nev. 494, 500, 255 P.3d 291, 295 (2011).]

Order of Affirmance, Exh. 172, p. 2 (ECF No. 56-5, p. 3).

A Nevada statute requires that an accomplice's testimony be corroborated by other independent evidence which tends to connect the defendant with the commission of the offense. *See* Nev. Rev. Stat. § 175.291(1). The statute defines an accomplice as "one who is liable to prosecution, for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." Nev. Rev. Stat. § 175.291(2). The Nevada Supreme Court ruled that the evidence at trial was not such as to warrant this jury instruction with respect to Robinson.

In his amended petition, Finias asserts that the Nevada Supreme Court's ruling was an unreasonable application of *Kansas v. Ventris*, 556 U.S. 586 (2009). Amended Petition (ECF No. 25), p. 18. The Supreme Court's holding in *Ventris*, though, has nothing to do with the issue in this case; in *Ventris*, the Supreme Court held that evidence obtained in violation of the Sixth Amendment is admissible for purposes of impeachment of a defense witness. *See Ventris*, 556 U.S. at 594. Finias cites a footnote in *Ventris* for the general proposition that it is the province of the jury to weigh the credibility of competing witnesses. *See* Amended Petition at 18. However, *Ventris* does not apply that principle to the evidentiary foundation necessary to require an accomplice instruction to be given under state law. The Nevada Supreme Court's ruling did not unreasonably apply *Ventris*.

///

Finias changes course in his reply; there, his only citation to federal authority supporting this claim is the following:

> The Sixth and Fourteenth Amendments to the United States Constitution grant criminal defendants the right to a jury trial and to present a defense, including the right to have the trial court instruct the jury on the defendant's theory of defense upon request when the instruction is "legally sound and evidence in the case makes it applicable." *See Byrd v. Lewis*, 566 F.3d 855, 860 (9th Cir. 2009); *see also Bradley v. Duncan*, 315 F.3d 1091, 1098 (9th Cir. 2002) (citing to *Matthews v. United States*, 485 U.S. 58 (1988)). "However, even if the failure to provide a theory-of-defense instruction violates federal due process, the court must still apply the harmless-error analysis mandated by *Brecht v. Abrahamson*, 507 U.S. 619 (1993), and ask whether that error had a "substantial and injurious effect or influence in determining the jury's verdict." *Calderon v. Coleman*, 525 U.S. 141, 145-46 (1998).

Reply (ECF No. 67), p. 13. This argument, and the federal authority cited in support of it, are plainly inapposite. The proposed jury instruction at issue here—an instruction about how the jury is to treat testimony of an accomplice—is not a theory-of-defense instruction.

In short, Finias makes no viable argument that the Nevada Supreme Court's ruling on this claim was contrary to, or an unreasonable application of, United States Supreme Court precedent, or that it was based on an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d). The Court will deny Finias habeas corpus relief on Ground 2.

**D.   Ground 3**

In Ground 3, Finias claims that the trial court violated his federal constitutional rights "by an instruction that required the jury find the prosecution prove only 'material' elements beyond a reasonable doubt." Amended Petition (ECF No. 25), pp. 19–20. Specifically, in this claim, Finias challenges a part of Jury Instruction No. 24, given at his trial, which stated:

> The Defendant is presumed innocent until the contrary is proved. This presumption places upon the State the burden of proving beyond a reasonable doubt every material element of the crime charged and that the Defendant is the person who committed the offense.

Jury Instruction No. 24, Exh. 140 (ECF No. 53-4, p. 25). Finias argues that because the instruction did not define "material element," the jurors were free to speculate which elements were material, and there is no way to determine whether the jury found all elements of the charged crimes beyond a reasonable doubt. *See* Amended Petition (ECF No. 25), pp. 19–20.

Finias raised this issue on his direct appeal (Appellant's Opening Brief, Exh. 168, pp. 46–52 (ECF No. 56-1, pp. 56–62)), and the Nevada Supreme Court ruled as follows:

> … Finias argues that the given instruction on the presumption of innocence improperly reduced the State's burden of proof because it did not define what elements were "material." We disagree because other instructions defined the elements of each charged offense and the State's burden to prove those elements. [*Burnside v. State*, 131 Nev. 371, 352 P.3d 627 (2015)]; *see also Nunnery v. State*, [127 Nev. 749, 785–86, 263 P.3d 235, 259–60 (2011)]; *Morales v. State*, 122 Nev. 966, 971, 143 P.3d 463, 466 (2006); *Crawford v. State*, 121 Nev. 744, 751, 121 P.3d 582, 586–87 (2005); *Leonard v. State*, 114 Nev. 1196, 1209, 969 P.2d. 288, 296 (1998). Therefore, the district court did not abuse its discretion in giving the challenged instruction. [*Rose v. State*, 127 Nev. 494, 500, 255 P.3d 291, 295.]

Order of Affirmance, Exh. 172, p. 2 (ECF No. 56-5, p. 3) (footnote, setting forth text of challenged instruction, omitted).

Finias argues that the Nevada Supreme Court's ruling was an unreasonable application of *In re Winship*, 397 U.S. 358 (1970), in which the United States Supreme Court held that the Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." <u>*See In re Winship*</u>, 397 U.S. at 364; *see also* Amended Petition (ECF No. 25), p. 20.

This Court finds that the Nevada Supreme Court's ruling was reasonable. The jury instructions explained, in clear terms, what elements had to be proven beyond a reasonable doubt for the jury to find Finias guilty. Jury Instruction No. 5 defined "murder;" Jury Instruction No. 8 set forth the elements of first-degree murder, and stated: "All three elements—willfulness, deliberation, and premeditation—must be proven beyond a reasonable doubt before an accused can be convicted of first-degree

12

murder." Jury Instruction Nos. 5 and 8, Exh. 140 (ECF No. 53-4, pp. 6, 9). *See also* Jury Instruction No. 18, Exh. 140 (ECF No. 53-4, p. 19) (defining "deadly weapon"); Jury Instruction No. 19, Exh. 140 (ECF No. 53-4, p. 20) (explaining the crime of discharging a firearm out of a motor vehicle); Jury Instruction No. 4, Exh. 139 (ECF No. 53-3, p. 5) (defining "possession"); Jury Instruction No. 5, Exh. 139 (ECF No. 53-3, p. 6) (explaining the crime of possession of a firearm by an ex-felon); Jury Instruction No. 6, Exh. 139 (ECF No. 53-3, p. 7) (defining "firearm"). It was reasonable for the Nevada Supreme Court to conclude that the jury instructions, read as a whole, made clear to the jury that the "material elements" were those elements set forth in the instructions as comprising the charged crimes.

The Court determines that the Nevada Supreme Court's ruling, denying relief on the claim in Ground 3, was not contrary to, or an unreasonable application of, *In re Winship*, or any other United States Supreme Court precedent. The Court will deny Finias habeas corpus relief on Ground 3.

**E.    Ground 4**

In Ground 4, Finias claims that his federal constitutional rights were violated on account of ineffective assistance of his trial counsel because his trial counsel "[failed] to adequately investigate Debra Williams and impeach the credibility of Detective Benjamin[s]." Amended Petition (ECF No. 25), pp. 21–23.

Finias appears to allege that Finias and Coleman had an amicable relationship and that it was Robinson who killed Coleman, and that Williams had information substantiating this. *See id*. Finias appears to contend, further, that law enforcement took Williams' statement but did not finalize it for evidentiary purposes. *See id*. Apparently, it is Finias' claim that had his counsel investigated Williams further and called her to the witness stand, her testimony would have aided the defense by substantiating these allegations and could have been used to impeach Detective Benjamins, who he alleges lied on the witness stand about not interviewing Williams. *See id*.

///

1    Finias asserted this claim of ineffective assistance of counsel in his state habeas
2 action. Supplemental Points and Authorities in Support for Writ of Habeas Corpus for
3 Post Conviction Relief, Exh. 183, pp. 18– 20 (ECF No. 57-6, pp. 19–21). The state
4 district court held an evidentiary hearing, but not regarding this claim. Transcript of
5 Evidentiary Hearing, Exh. 188 (ECF No. 58-1). The state district court denied relief on
6 this claim. Findings of Fact, Conclusions of Law and Order, Exh. 189, p. 12 (ECF No.
7 58-2, p. 13). Finias appealed and asserted this claim on the appeal. Appellant's
8 Opening Brief, Exh. 201, pp. 36–38 (ECF No. 59-8, pp. 47–49). The Nevada Supreme
9 Court affirmed, ruling as follows on this claim:

> Finias … argues that trial counsel should have impeached Detective Benjamins' testimony that the police did not interview Ms Williams. Benjamins testified that the police initially tried to talk with Williams but the efforts were abandoned and she was ultimately not interviewed. The defense investigator's report includes Williams' statement that some unspecified police officers spoke with her but that she did not give and they did not request a statement. Williams did not testify at trial, and postconviction counsel was unable to locate her. Decisions regarding cross-examination of a witness are tactical matters that are virtually unchallengeable, and Finias has not shown extraordinary circumstances warranting a challenge, particularly when the inaccuracy, if any, in Benjamins' testimony is how this apparently de minimis encounter between Williams and police officers was characterized. Finias has further failed to show prejudice in this regard in light of the de minimis nature of the potential inconsistency he highlights. The district court therefore did not err in denying this claim.

Order of Affirmance, Exh. 206 (ECF No. 59-13).

The Nevada Supreme Court's ruling was reasonable. Finias has proffered no evidence to show that Benjamins contacted or interviewed Williams, or that she was aware that any law enforcement had done so. Nor does Finias proffer any evidence to show that any further investigation of Williams would have been of any benefit to the defense.

Finias points to a memorandum written by a defense investigator reporting on his interview of Williams. *See* Petitioner's Exh. 11 (ECF No. 27-1). In that memorandum, the defense investigator wrote:

> I asked her [Williams] if she had ever given a statement to the police about the murder. She said, "The cops came and talked to me and wanted me to do a report." I asked if they had her fill out a Voluntary Statement. She said, "They were going to give it to me, but took it back;" "I guess they didn't like what I said."

*Id*. This, though, does not show Benjamins to have lied. There is no mention of Benjamins contacting Williams or knowing that any other officers had. Moreover, this memorandum does not indicate that any law enforcement conducted an actual interview of Williams.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court propounded a two prong test for analysis of claims of ineffective assistance of counsel: the petitioner must demonstrate (1) that the attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. A court considering a claim of ineffective assistance of counsel must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id*. at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. And, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687.

Where a state court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104-05. In *Harrington*, the Supreme Court instructed:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential,

15

> [*Strickland*, 466 U.S. at 689]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, [*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 994–95 (2010) (acknowledging double deference required with respect to state court adjudications of *Strickland* claims).

In analyzing a claim of ineffective assistance of counsel under *Strickland*, a court may first consider either the question of deficient performance or the question of prejudice; if the petitioner fails to satisfy one element of the claim, the court need not consider the other. *See Strickland*, 466 U.S. at 697.

Here, Finias makes no showing that his trial counsel performed unreasonably in not further investigating Williams or in not attempting, in cross-examination, to show that Benjamins lied about law enforcement not contacting or interviewing Williams. Finias has not made any showing what any further investigation of Williams would have turned up. And, Finias has made no showing that his trial counsel had any information that would have allowed for more effective cross-examination of Benjamins. Finias' trial counsel did not perform unreasonably, and, at any rate, Finias was not prejudiced. The ruling of the Nevada Supreme Court was not an unreasonable application of *Strickland*. The Court will deny Finias habeas corpus relief on Ground 4.

### F.   Certificate of Appealability

The standard for the issuance of a certificate of appealability requires a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c). The Supreme Court has interpreted 28 U.S.C. § 2253(c) as follows:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077–79 (9th Cir. 2000). Applying the standard articulated in *Slack*, the Court finds that a certificate of appealability is unwarranted.

## IV. CONCLUSION

It is therefore ordered that Petitioner's Amended Petition for Writ of Habeas Corpus (ECF No. 25) is denied.

It is further ordered that Petitioner is denied a certificate of appealability.

It is further ordered that the Clerk of the Court is directed to enter judgment accordingly.

DATED this 7th day of May, 2021.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE